## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ELLEN MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | Judge: |
| ANDREW BALTERMAN, | ) | |
| | ) | Jury Demanded |
| Defendant. | ) | |

## **COMPLAINT**

Plaintiff, ELLEN MILLER, by and through her undersigned counsel, brings this complaint for breach of fiduciary duty and tortious interference with prospective economic advantage, against ANDREW BALTERMAN. In support thereof, she alleges as follows:

## **Parties, Jurisdiction, and Venue**

1.     Plaintiff, Ellen Miller, ("Miller"), is domiciled in Illinois; therefore, she is a citizen of the State of Illinois.

2.     Defendant, Andrew Balterman, ("Balterman"), is domiciled in Ohio; therefore, he is a citizen of the State of Ohio.

3.     Jurisdiction exists in this case under 28 U.S.C. 1332(a) because the amount in controversy, excluding interests and costs, exceeds $75,000.

4.    Venue is proper in this district under 28 U.S.C. 1391 because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this judicial district.

5.    Miller was at all relevant times as alleged herein, the niece of Lee Balterman, (sometimes referred to as "Lee" or "the Decedent"), who died in March 2012.

6.    He left an estate, hereinafter referred to as either "the Estate," or "Estate of Balterman."

7.    Lee Balterman was divorced, and left no children.

8.    Lee Balterman was an accomplished photographer whose work was published on the cover of *Life* magazine, in prestigious sports and other publications, and exhibited throughout the country.

9.    His heirs were: his niece, Ellen Miller; his nephew, Andrew Balterman; and Andrew's two sisters (Lee's nieces): Megan (Balterman) Cameron and Marie Balterman.

10.    Ms. Miller was, and is, an heir of the Estate of Balterman.

11.    Ms. Miller was bequeathed 25% (1/4) of the Estate.

12.    Defendant Balterman, was at all relevant times the executor of the Estate of Balterman ("Executor").

13. As Executor, Balterman owed fiduciary duties to the Estate and each of its beneficiaries, including Miller.

14. Despite Balterman's success and relative fame during his lifetime, the Executor failed to sufficiently investigate and account for Balterman's assets, including but not limited to: (a) hundreds of thousands of photographs, negatives, silver-gelatin prints, or original works; (b) thousands of books, prints and photographs; (c) cameras and equipment; (d) exhibition books; (e) furniture; (f) real property; and unique collectibles such as a Picasso vase and signed Ernie Banks memorabilia.

15. Individuals were stealing negatives from Decedent, with the knowledge of the Executor, Defendant Balterman.

16. When requested by Miller to account for the missing items, Defendant Balterman responded either that he did not have the items, was not aware of the items, or the items were sold (with no evidence of such, and no support they were sold at a fair price).

17. Balterman did not provide any appraisal of Balterman's work, or financial reports, or reasonably investigate or pursue the value thereof for the benefit of Miller and the Estate; rather, Balterman engaged in self-dealing and profited from Lee's work on his own, and for the benefit of his immediate family and friends.

18.     There was no accounting for, and no appraisal for, items such as Decedent's photographs, negatives, furniture, antiques, signed Ernie Banks baseball, and bat, vase signed by Picasso, original *Life* magazine cover.

19.     Because of the nature of Balterman's work, there were a number of copyrights. The executor did not account for these, and it is believed converted them to the benefit of himself and his immediate family (sisters).

20.     On information and belief, Defendant Balterman worked with and conspired with Paul Berlanga, Adam Holtzman, Lucas Zenk, David Ruttenberg, Andrew Ward, and others to profit from the work of Decedent, for the benefit of Balterman and his immediate family and to the detriment of Miller and the Estate.

21.     In breach of his fiduciary duties, Balterman has refused to recognize Miller's rights as an heir, and breached his duties to her, as more fully alleged herein.

22.     Indeed, Ms. Miller was not even identified as an heir when the original probate documents were filed.

23.     None of Lee Balterman's negatives, slides, color transparencies, photographs or silver gelatin prints have been sold, for the benefit of the Estate and the heirs, since the day Lee Balterman died on March 16, 2012.

24.     Before opening an estate, and not under the supervision of any judicial authority, Defendant Balterman entered into a written contract with Paul

Berlanga, owner of Fear Not Fine Art Ltd., as of May 2012 for him to represent the estate of Lee Balterman's photography work.

25.     Lee's Balterman's Will was not even opened until April 3, 2013.

26.     In September 2013, Plaintiff made a report with the Chicago Police Department claiming that Paul Berlanga, in concert with Defendant Balterman, and in violation of the fiduciary duties owed to the Estate and Plaintiff as an heir, removed over 500,000 negatives, slides and color transparencies from an old, huge wooden file cabinet in Lee Balterman's assisted-living apartment (at Kenwood Brookdale Senior Living), as well as his professional cameras, photography equipment, numerous black/white photography prints, silver-gelatin prints, and a 1,500-book collection after April 2, 2012.

27.     In November 2013, real estate attorney David Ruttenberg told Plaintiff he helped two former employees from Stephen Daiter Gallery (Adam Holtzman and Lucas Zenk) go into business as Twenty Fifty-Four Ltd. and Alibi Fine Art Chicago, IL. On information and belief, they sold Lee Balterman photographs and did not remit the money to the Estate.

28.     On information and belief, Lee Balterman had investments with Stein, Roe Farnham dating as far back as 1979. Defendant Balterman, in his capacity as Executor, did not marshal and remit assets related to these investments. It is also believed that Balterman exerted undue influence on Lee, during his life,

29.     Defendant Balterman, in his capacity as Executor, also did not marshal and account for bank accounts believed to be maintained at the Northern Trust bank.

30.     On information and belief, there was certain Treasury Bonds that were also not accounted for. These bonds matured in 2009 and 2010. Each being $10,000, yet Defendant Balterman has not accounted for the money.

## COUNT I
## BREACH OF FIDUCIARY DUTY

31.     Plaintiffs re-alleges ¶¶ 1-30 and incorporates the same as if set forth in this Count 1.

32.     Under governing Illinois law, an administrator of an estate must act with the highest degree of fidelity and with the upmost good faith in handling estate assets.

33.     Balterman, in his capacity as the executor of the Estate of Balterman, owed Plaintiff Miller, a beneficiary and heir, a fiduciary duty.

34.     Under the terms of the relevant testamentary documents, Miller would have received 1/4 of the assets of the Estate and, therefore, reasonably expected to receive those assets pursuant to Lee's estate plans.

35.     Balterman unlawfully converted appropriated ownership of Lee's personal assets to himself and his sisters and fraudulently caused, through his own

actions and by fraudulently and unduly influencing Lee to take certain actions, the Estate to be depleted and Miller's ¼ share to be significantly diminished.

36. Lee Balterman's estate has been damaged by the unlawful withdrawal of assets fraudulent conduct by the Taylors in an amount as yet unknown by Michele but believed to be well in excess of $2 million.

37. Balterman willfully and maliciously misappropriated and converted the Estate's assets in total, complete and utter disregard for Miller.

38. But for Defendant Balterman's conversion of assets/interference, Miller would have received 1/4 of those assets.

WHEREFORE, Plaintiff, ELLEN MILLER, requests that judgment be entered in her favor and against ANDREW BALTERMAN, in an amount to be proved at trial but in excess of the jurisdictional amount of $75,000.

## COUNT II

### INTENTIONAL INTERFERENCE WITH TESTAMENTARY EXPECTANCY THROUGH UNDUE INFLUENCE

39. Plaintiff re-allege ¶¶ 1-38 and incorporate the same as if set forth herein.

40. Under the terms of the relevant testamentary documents, Miller would have received 1/4 of the assets of the Estate and, therefore, reasonably expected to receive those assets pursuant to Lee's estate plans.

41.     Balterman exercised undue influence over Lee by abusing trust and confidence reposed in him by Lee, taking a power of attorney in 2003 and using that power for Andrew Balterman's own benefit, signing documents on his behalf, making wealth transfers, and working with Josh Mitzen, an alleged guardian.

43.     For instance, Plaintiff learned in November 2015 that a second Living Trust had been set up 7/2/03 without Lee's signature being necessary. Instead, a letter on a simple piece of paper was given to him to sign, which he did, on 7/6/03.

44.     Andy Balterman refinanced Lee's condominium, at 910 N. Lake Shore Drive, in early 2006.

45.     On information and belief, over a quarter-of-a-million dollars in assets was converted from this transaction.

46.     Balterman was not competent the manage his own affairs.

47     At Balterman's direction the contents in the # 818 Condo (including numerous negatives, slides, color transparencies, photographs, original paintings by famous artists and a 1,500 - 2,000 book collection) were removed from the condo and converted.

48.     But for Balterman's exercise of undue influence, plaintiff would have received a percentage of the funds and assets converted, in excess of $75,000.

WHEREFORE, Plaintiff, ELLEN MILLER, requests that judgment be

entered in her favor and against ANDREW BALTERMAN, in an amount to be proved at trial but in excess of the jurisdictional amount of $75,000.

Respectfully Submitted,

Christopher V. Langone

Christopher V. Langone
Langone Batson & Lavery
17 N. Wabash, Ste. 500
Chicago, IL 60601

PLAINTIFF DEMANDS TRIAL BY JURY